# In the United States Court of Federal Claims

No. 16-554
Filed: March 31, 2017

*******************************************

| | |
|---|---|
| | Breach of Contract; |
| | Dual Compensation Act, |
| | 5 U.S.C §§ 5533, 5535–36; |
| | Federal Travel Regulation ("FTR"), |
| | 41 C.F.R. §§ 300-3.1, 301-11.1, |
| | 301-11.3, 301-11.603, 301- |
| | 11.604, 301-11.605, 301-12.1, |
| TATIANA A. CHRISTIAN, | 301-52.17, 301-52.19, 302-17.22; |
| | IRS Publication 463 (2016) (Tax |
| Plaintiff, | Treatment Of Travel Expenses); |
| | NASA Interim Directive For Travel |
| v. | ("NID") 9700.2; |
| | NASA Procedural Requirements |
| THE UNITED STATES, | ("NPR") 9700.1 §§ 301-11.1, |
| | 301-11.201, 301-11.203, 301- |
| Defendant. | 11.207, 301-11.226, 301-12.1; |
| | Rules Of The United States Court Of |
| | Federal Claims  ("RCFC") |
| | 12(b)(6) (Failure To State Claim), |
| | 15(a)(2) (Amended  and |
| | Supplemental Pleadings), |
| | 56(a) (Summary Judgment). |

*******************************************

**Eric Pines**, Law Offices of Eric L. Pines, PLLC, Houston, Texas, Counsel for Plaintiff.

**Sonia Marie Orfield**, United States Department of Justice, Washington, D.C., Counsel for Government.

### MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION TO AMEND THE COMPLAINT

This Memorandum Opinion And Order adjudicates the Government's Motion To Dismiss And For Summary Judgment, as well as Plaintiff's Cross-Motion To Amend The Complaint, in a breach of contract case filed by an employee of the National Aeronautics and Space Administration ("NASA").

To facilitate review of this Memorandum Opinion And Order, the court has provided the following outline:

I.   RELEVANT FACTUAL BACKGROUND.

    A.   Plaintiff's Temporary Duty Assignment And February 21, 2010 Memorandum Of Understanding.

    B.   Plaintiff's September 21, 2011 Equal Employment Opportunity Complaint And The November 18, 2011 Settlement Agreement.

    C.   Plaintiff's February 4, 2012 Breach Of Settlement Claim And Subsequent Proceedings Before The Equal Employment Opportunity Commission.

    D.   The February 13, 2013 Remand To The National Aeronautics And Space Administration And Additional Equal Employment Opportunity Commission Proceedings.

II.   PROCEDURAL HISTORY.

III.   DISCUSSION.

    A.   Jurisdiction.

    B.   Standing.

    C.   Standards of Review.

        1.   Failure To State A Claim Upon Which Relief May Be Granted, Pursuant To RCFC 12(b)(6).

        2.   Leave To Amend, Pursuant To RCFC 15(a)(2).

        3.   Summary Judgment, Pursuant To RCFC 56(a).

    D.   The Government's September 7, 2016 Motion To Dismiss.

    E.   The Government's September 7, 2016 Motion For Summary Judgment.

        1.   The Government's Argument.

            a.   Regarding Per Diem And Miscellaneous Expenses.

            b.   Regarding Travel Expenses Paid By The Office Of Safety And Mission Assurance Headquarters.

            c.   Regarding Travel Expenses Paid By The Johnson Space Center.

            d.   Regarding Tax Withholding.

            e.   Regarding The Combined Amount Of Per Diem.

        2.   Plaintiff's December 1, 2016 Response.

        3.   The Court's Resolution.

    F.   Plaintiff's December 1, 2016 Cross-Motion To Amend And The Government's December 19, 2016 Reply.

        1.   Whether Plaintiff Is Entitled To Per Diem Incurred From January 25, 2010 To February 1, 2010.

            a.   Plaintiff's Argument.

            b.   The Government's Reply.

        c.  The Court's Resolution.

    2.  **Whether Plaintiff Is Entitled To Additional Travel Reimbursement.**

        a.  **Regarding The February 15–21, 2010 Relocation Trip To Washington, D.C.**

            i.  Plaintiff's Argument.

            ii.  The Government's Reply.

            iii.  The Court's Resolution.

        b.  **Regarding The February 17–March 1, 2011 Relocation Trip To Houston, Texas.**

            i.  Plaintiff's Argument.

            ii.  The Government's Reply.

            iii.  The Court's Resolution.

        c.  **Regarding The Additional Per Diem Related To Travel.**

            i.  Plaintiff's Argument.

            ii.  The Government's Reply.

            iii.  The Court's Resolution.

        d.  **Regarding Other Per Diem And Miscellaneous Expenses.**

            i.  Plaintiff's Argument.

            ii.  The Government's Reply.

            iii.  The Court's Resolution.

    3.  **Whether Plaintiff Is Entitled To Taxable Extended Temporary Duty Status For The Entire Detail, And Related Tax Reimbursement.**

        a.  Plaintiff's Argument.

        b.  The Government's Reply.

        c.  The Court's Resolution.

    4.  **Whether Plaintiff Is Entitled To A Late Payment Fee.**

        a.  Plaintiff's Argument.

        b.  The Government's Reply.

        c.  The Court's Resolution.

    5.  **Whether Plaintiff Is Entitled To A Second Salary.**

        a.  Plaintiff's Argument.

        b.  The Government's Reply.

        c.  The Court's Resolution.

**IV.  CONCLUSION.**

## I.  RELEVANT FACTUAL BACKGROUND.[1]

In September of 2005, Tatiana A. Christian was hired by NASA as a federal civil servant employee and initially was classified, under the General Schedule Classification and Pay System ("GS System"), as a GS-13 Engineer.  Compl. ¶ 9.  Ms. Christian was stationed at the Johnson Space Center ("JSC"), located in Houston, Texas.  Compl. ¶¶ 8–9.  In October of 2008, Ms. Christian was promoted to a GS-14 position, as the Lead, International Partners, for the Safety And Mission Assurance And Program Risk Office (the "S&MA/PR Office"), located at the JSC in Houston, Texas.  Compl. ¶ 10.

### A.  Plaintiff's Temporary Duty Assignment And February 21, 2010 Memorandum Of Understanding.

In early 2010, Ms. Christian was detailed to NASA's Office Of Safety And Mission Assurance Headquarters ("OSMA HQ") in Washington, D.C.  Compl. ¶ 11.  Beginning on February 15, 2010, Ms. Christian drove her personally owned vehicle from Washington, D.C. to Houston, Texas.  Pl. Resp. Ex. K-10 at 133.  Ms. Christian then picked up her personal belongings and drove back to Washington, D.C., arriving on or about February 21, 2010.  Pl. Resp. Ex. K-10 at 133; *see also* Gov't App'x at 113 (evidencing same).

On February 21, 2010, Ms. Christian signed a Memorandum Of Understanding ("MOU"), reflecting an agreement between NASA's OSMA HQ, in Washington, D.C., and NASA's S&MA/PR, in Houston, Texas.  Compl. Ex. B at 5.  The MOU provided that Ms. Christian would provide her services to both OSMA HQ and the S&MA/PR office while receiving specialized training from the former, and that the detail would last for an initial period of three months, "to be extended by mutual agreement."  Compl. Ex. B at 1–2.  The MOU also provided that Ms. Christian

---

[1] The relevant facts discussed herein were derived from: the May 6, 2016 Complaint ("Compl.") and the exhibits attached thereto ("Compl. Exs. A–Q"); the Government's Appendix ("Gov't App'x 1–216"), attached to the Government's September 7, 2016 Motion To Dismiss And Motion For Summary Judgment ("Gov't Mot."); the Plaintiff's Appendix ("Pl. Resp. Exs. A–K-18"), attached to Plaintiff's December 1, 2016 Opposition To [The Government's September 7, 2016] Motion To Dismiss/Motion For Summary Judgment And Cross-Motion To Amend The Complaint ("Pl. Resp."); the Government's Supplemental Appendix ("Gov't Supp. App'x 1–11") attached to the Government's December 19, 2016 Reply ("Gov't Reply"); Plaintiff's Appendix ("Pl. Reply Exs. L–M"), attached to Plaintiff's December 27, 2016 Reply in support of the December 1, 2016 Cross-Motion To Amend the Complaint ("Pl. Reply"); Plaintiff's February 7, 2017 Supplemental Exhibits ("Pl. Supp. Exs. 1–2"); and the Government's February 17, 2017 Supplemental Exhibits ("Gov't Supp. Exs. 1–2").

was not to receive per diem[2] payments for the time she spent working in Washington, D.C.  Compl. Ex. B at 2 ("No per diem was offered to the employee and the employee agreed.").

From February 1, 2010 to March 30, 2011, Ms. Christian traveled between the JSC in Houston, Texas and OSMA HQ in Washington, D.C on several occasions.  Compl. ¶ 14.  She also traveled to: Cleveland, Ohio (Pl. Resp. Ex. K-10 at 136, 145); Huntsville, Alabama (Pl. Resp. Ex. K-10 at 137); Moscow, Russia (Pl. Resp. Ex. K-10 at 140); Orlando, Florida (Pl. Resp. Ex. K-10 at 145); and Tsukuba, Japan (Pl. Resp. Ex. K-10 at 146).[3]  During certain periods, she worked from her permanent duty station in Houston, Texas, instead of from her temporary duty station in Washington, D.C.[4]

---

[2] The "per diem allowance" is defined by the Federal Travel Regulation ("FTR"), 41 C.F.R. § 300-3.1, as:

> a daily payment instead of reimbursement for actual expenses for lodging (excluding taxes), meals, and related incidental expenses.  The per diem allowance is separate from transportation expenses and other miscellaneous expenses.  The per diem allowance covers all charges and services, including any service charges where applicable.  Lodging taxes in the United States are excluded from the per diem allowance and are reimbursed as a miscellaneous expense.  In foreign locations, lodging taxes are part of the per diem allowance and are not a miscellaneous expense.  The per diem allowance covers the following:
>
> (a) Lodging.  Includes expenses, except lodging taxes in the United States, for overnight sleeping facilities, baths, personal use of the room during daytime, telephone access fee, and service charges for fans, air conditioners, heaters and fires furnished in the room when such charges are not included in the room rate.
>
> (b) Meals.  Expenses for breakfast, lunch, dinner and related tips and taxes (specifically excluded are alcoholic beverage and entertainment expenses, and any expenses incurred for other persons).
>
> (c) Incidental expenses. Fees and tips given to porters, baggage carriers, hotel staff, and staff on ships.

41 C.F.R. § 300-3.1.

[3] NASA reimbursed Ms. Christian for the travel expenses associated with these trips.  Pl. Resp. Ex. K-10 at 132–53.

[4] The dates that Ms. Christian worked from her permanent duty station in Houston, Texas are evidenced by the following travel log provided by her: Pl. Resp. Ex. K-10 at 135 (4/2/2010–4/11/2010); 136–37 (5/5/10–5/8/10); 137–38 (5/23/2010–5/31/2010); 139 (6/21/2010–6/25/2010); 141–42 (8/12/2010–8/17/2010); 143 (9/3/2010–9/12/2010); 144 (10/8/2010–10/11/2010); 146–48

From February 17 to March 1, 2011, Ms. Christian relocated from Washington, D.C. to Houston, Texas.  Pl. Resp. Ex. K-10 at 151–52.  Ms. Christian's detail at OSMA HQ ended on March 30, 2011.  Compl. ¶ 14.

**B.      Plaintiff's September 21, 2011 Equal Employment Opportunity Complaint And The November 18, 2011 Settlement Agreement.**

On September 21, 2011, Ms. Christian filed a Equal Employment Opportunity complaint with the JSC's Office of Diversity and Equal Opportunity ("the EEO Complaint"), alleging that she was discriminated against on the basis of national origin.  Compl. Ex. D.

On November 18, 2011, Ms. Christian and NASA engaged in mediation.  Compl. ¶ 18.  On that same day, Ms. Christian and NASA entered into a Settlement Agreement, that provided, in part:

> In order to resolve the matters in dispute without further administrative processes, litigation, expense and delay, the Aggrieved Individual [Ms. Christian] and the Agency [*i.e.,* NASA] agree as follows:
>
> 1. The Agency agrees to complete a legal review and opinion concerning Aggrieved Individual's entitlement to per diem, or meals and incidental expenses, less lodging costs, for the period of her detail to NASA Headquarters memorialized in the Memorandum of Understanding dated in February 2010 not later than November 23, 2011, and to furnish that opinion to a [Chief Financial Officer ("CFO")] representative and Aggrieved Individual.
>
> > a. If the opinion is that Aggrieved Individual is entitled to per diem less lodging costs, the Agency agrees to determine and pay Aggrieved Individual the correct and authorized amount of per diem, less payments, she has already received, as soon as possible.
> >
> > b. If the opinion is that Aggrieved Individual is not entitled to said per diem, the Aggrieved Individual retains her right to seek reconsideration of that opinion. Additionally, the Agency agrees to allow Aggrieved Individual to keep the amount she has already received and to pay her an additional amount of $1,000.00.
>
> >        *        *        *
>
> 3. On or before January 6, 2012, Mr. Ven Feng, Manager, Safety and Mission Assurance/Program Risk Office, will approach Headquarters to see if he can secure a position for Aggrieved Individual to transfer to NASA Headquarters OSMA performing duties assigned to her by Headquarters with a work duty station in

---

(11/21/2010–12/9/2010); 148–49 (12/17/2010–1/1/2011); 150 (1/14/2011–1/20/2011); and 151–52 (2/18/2011–2/26/2011).

Houston, Texas.  If Mr. Feng is able to secure a position, Aggrieved Individual is free to accept or not accept the position.  If Mr. Feng is unable to secure a position as described, Mr. Feng will notify Aggrieved Individual.

4. If Aggrieved Individual's entitlement to per diem is approved (See # 1 above), Aggrieved Individual will be granted any movement of goods and travel reimbursements due under federal travel regulations and NASA Shared Services Center (NSSC), Johnson Space Center (JSC), and NASA Headquarters travel regulations.

Compl. Ex. A ¶¶ 2-1, 2-3, 2-4.

Paragraphs 2-1 and 2-4 of the November 18, 2011 Settlement Agreement first required that NASA conduct a legal review to determine whether Ms. Christian was entitled to certain per diem. Compl. Ex. A ¶¶ 2-1, 2-4.  If the legal review concluded that Ms. Christian was entitled to per diem, NASA promised to pay the per diem amount that Ms. Christian was owed, if authorized by applicable regulations.  Compl. Ex. A ¶¶ 2-1, 2-4.  In addition, under Paragraph 2-3, the Manager of Ms. Christian's S&MA/PR office ("the S&MA/PR Manager") promised to attempt to secure a permanent position for Ms. Christian at OSMA HQ.  Compl. Ex. A ¶ 2-3.

On November 22, 2011, NASA's legal review concluded that Ms. Christian was owed per diem, pursuant to the Federal Travel Regulation ("FTR").  Gov't App'x at 192–93 (citing 41 C.F.R. § 301-11.3 (providing that an agency must pay per diem to traveling employees, unless (1) the employee is traveling to a training event and agrees not to be paid per diem expenses; or (2) the employee performs pre-employment interview travel, and the interviewing agency does not authorize payment of per diem)).

On November 28, 2011, a representative of NASA's Chief Financial Officer ("the CFO Representative") sent an e-mail to Ms. Christian, requesting information in order to calculate the amount of per diem due.  Gov't App'x at 179–80.  NASA then determined that the amount of per diem due Ms. Christian was $11,638.39, based on the FTR and NASA's Procedural Requirements For Travel (the "NPR").  Compl. Ex. I; Gov't App'x 107.

## C.    Plaintiff's February 4, 2012 Breach Of Settlement Claim And Subsequent Proceedings Before The Equal Employment Opportunity Commission.

On February 4, 2012, Ms. Christian sent a memorandum to NASA's Office of Diversity and Equal Opportunity, alleging that (1) NASA engaged in bad faith negotiations during the November 18, 2011 mediation; (2) incorrect data was provided during the mediation; and (3) NASA discouraged Ms. Christian from being represented by counsel during the mediation. Compl. Ex. E at 1–3.  Ms. Christian also alleged that NASA breached the November 18, 2011 Settlement Agreement, because the S&MA/PR Manager did not secure a permanent position for her at OSMA HQ, pursuant to Paragraph 2-3 of the November 18, 2011 Settlement Agreement, so that the September 21, 2011 EEO Complaint should be reinstated.  Compl. Ex. E at 1; *see also* Compl. Ex. A ¶ 2-3 (reflecting that the S&MA/PR Manager would "approach Headquarters to see if he can secure a position for Aggrieved Individual to transfer to NASA Headquarters OSMA").

On March 13, 2012, and before NASA's Office of Diversity and Equal Opportunity issued a decision on her February 4, 2012 Breach Of Settlement Claim, Ms. Christian submitted an additional memorandum to the Equal Employment Opportunity Commission ("EEOC") in Washington, D.C, reiterating and supplementing her prior allegations. Compl. Ex. F at 1.

On May 7, 2012, NASA's Office of Diversity and Equal Opportunity denied Ms. Christian's February 4, 2012 Breach Of Settlement Claim. Compl. Ex. G at 1. On June 25, 2012, Ms. Christian appealed that decision to the EEOC. Compl. Ex. H at 1.

On June 29, 2012, NASA presented Ms. Christian with a Standard Form ("SF") 1164, "Claim For Reimbursement For Expenditures On Official Business," so that she could submit a claim for a per diem payment of $11,638.39. Compl. ¶ 25; *see also* Compl. Ex. I. Ms. Christian did not sign the form and declined to submit a claim for the $11,638.39. Compl. ¶ 25; *see also* Compl. Ex. K at 2 (explaining that Ms. Christian refused to sign the June 29, 2012 SF 1164).

On July 16, 2012, the EEOC issued a decision, determining that Paragraph 2-3 of the November 18, 2011 Settlement Agreement did not evidence sufficient consideration on the part of NASA,[5] but also determining that NASA did not breach the November 18, 2011 Settlement Agreement. Compl. Ex. J at 3.

On August 18, 2012, Ms. Christian filed a Request For Reconsideration, raising an additional allegation that NASA breached Paragraphs 2-1(a) and 2-4 of the November 18, 2011 Settlement Agreement by not explaining how it calculated the $11,638.39 per diem payment—consequently, Ms. Christian did not know whether the amount complied with applicable NASA regulations. Compl. Ex. K at 2. Therefore, since Ms. Christian did not know whether $11,638.39 was due, she refused to sign the SF 1164 and therefore never was compensated by NASA. Compl. Ex. K at 2–3. In addition, Ms. Christian contested the date on which her detail to Washington, D.C. began; NASA contended that the detail began on February 1, 2010, whereas Ms. Christian contended that the detail began on January 25, 2010. Compl. Ex. K at 2–3.

### D.     The February 13, 2013 Remand To The National Aeronautics And Space Administration And Additional Equal Employment Opportunity Commission Proceedings.

On February 13, 2013, the EEOC issued a decision denying the August 18, 2012 Request For Reconsideration. Compl. Ex. L at 1. Because the August 18, 2012 Request For Reconsideration alleged additional breach claims regarding NASA's per diem calculation, the EEOC ordered NASA to issue a letter of determination addressing the merits of the additional breach claims. Compl. Ex. L at 2–3.

---

[5] Specifically, Paragraph 2-3 provided that the S&MA/PR Manager was to "see if he can secure a position" for Ms. Christian at OSMA, and that he would inform her if he was unable to find a position. Compl. Ex. A ¶ 2-3. The EEOC found that this provision was based on "generalizations and contingencies," and determined that it lacked consideration, because NASA incurred "no legal detriment." Compl. Ex. J at 3.

On March 21, 2013, NASA's Office of Diversity and Equal Opportunity issued a letter of decision denying Ms. Christian's breach claims with respect to Paragraphs 2-1(a) and 2-4 of the November 18, 2011 Settlement Agreement.  Compl. Ex. M at 1.  NASA determined that Ms. Christian began her detail on February 1, 2010, and according to available records, the amount of per diem owed to Ms. Christian was $11,638.39.  Compl. Ex. M. at 1–2.  Although Ms. Christian requested clarification of the method by which NASA calculated the $11,638.39, NASA's Office of Diversity and Equal Opportunity found that NASA "ha[d] provided [Ms. Christian] with a detailed breakdown of its calculations."  Compl. Ex. M. at 2.  In addition, the November 18, 2011 Settlement Agreement "did not indicate a specific amount [to be] paid" and "specifically gave [NASA] authority to determine the proper amount of reimbursement."  Compl. Ex. M. at 2.

On April 5, 2013, Ms. Christian filed an appeal of NASA's Office of Diversity and Equal Opportunity's March 21, 2013 determination to the EEOC.  Compl. Ex. N at 1.  Ms. Christian reiterated that her start date was January 25, 2010, rather than February 1, 2010, and that she had refused to sign the SF 1164 because NASA did not explain its calculations.  Compl. Ex. N. at 2.

On September 15, 2015, the EEOC again affirmed that NASA did not breach the November 18, 2011 Settlement Agreement, because NASA honored its obligation to determine whether Ms. Christian was entitled to a per diem payment.  Compl. Ex. O at 3.  On October 15, 2015, Ms. Christian filed a Request For Reconsideration.  Compl. Ex. P at 1.  On February 4, 2016, the EEOC denied Ms. Christian's Request, and stated that Ms. Christian exhausted all available administrative remedies and appeals regarding the November 18, 2011 Settlement Agreement.  Compl. Ex. Q at 1, 3.

## II.   PROCEDURAL HISTORY.

On May 6, 2016, Ms. Christian ("Plaintiff") filed a Complaint in the United States Court of Federal Claims.  ECF No. 1.  The May 6, 2016 Complaint alleges that NASA breached the November 18, 2011 Settlement Agreement by failing properly to calculate and pay Plaintiff "any movement of goods and travel reimbursements due under federal travel regulations and NASA Shared Service Center (NSSC), [JSC], and NASA Headquarters travel regulations."  Compl. ¶ 36 (quoting Compl. Ex. A ¶ 2-4).  In addition, the May 6, 2016 Complaint alleges that the amount of per diem due "is well in excess of the $11,638.39 the Agency attempted to pay" and requests damages in an amount in excess of $100,000, plus reasonable attorneys' fees and costs.  Compl. ¶¶ 35–43.

On September 7, 2016, the Government filed a Motion To Dismiss for failure to state a claim upon which relief could be granted, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(b)(6), and a Motion For Summary Judgment, pursuant to RCFC 56(a), together with the Government's Appendix.  ECF No. 9.

On December 1, 2016, Plaintiff filed an Opposition To [The Government's] Motion To Dismiss/Motion For Summary Judgment And Cross-Motion To Amend The Complaint, together with the Plaintiff's Appendix.  ECF No. 14.  By the December 1, 2016 Cross-Motion To Amend The Complaint, Plaintiff seeks leave to amend the May 6, 2016 Complaint to allege the method by which Plaintiff calculated the amount of damages due, pursuant to the FTR and NPR, as well as a claim that NASA effectively required her simultaneously to work two jobs.  Pl. Resp. at 14;

*see also* Pl. Resp. Ex. K ¶¶ 27-a through 27-aa.  Plaintiff also seeks leave to amend the May 6, 2016 Complaint to increase the damages due to $158,734.64.  Pl. Resp. Ex. K ¶ 41.

On December 19, 2016, the Government filed a Reply, in support of the September 7, 2016 Motion To Dismiss And For Summary Judgment, together with the Government's Supplemental Appendix.  ECF No. 15.  On December 27, 2016, Plaintiff filed a Reply in support of the December 1, 2016 Cross-Motion To Amend the Complaint.  ECF No. 16.

On January 25, 2017, the Government filed a Motion For Leave To File A Supplemental Exhibit, together with a "Notification Of Error And Omission In Agency Document" ("Gov't Not.").  ECF No. 17.  The Supplemental Exhibit included a December 14, 2011 e-mail chain between Plaintiff and NASA, showing that February 1, 2010 was the start date for Plaintiff's detail to OSMA HQ.  Gov't Not. at 1.  On February 7, 2017, Plaintiff filed an Opposition to the Government's January 25, 2017 Motion ("Pl. Opp."), attaching a Supplemental Exhibit that included a more complete e-mail chain.  ECF No. 18.  On February 17, 2017, the Government filed a Reply ("Gov't Supp. Reply"), requesting leave to file two additional supplemental exhibits that were e-mails between Plaintiff and a NASA manager, relevant to determining the start date of Plaintiff's detail to OSMA HQ.  ECF No. 19.  On March 1, 2017, the court issued an Order, determining that the public interest was served by having both parties file supplemental exhibits to complete the record.  ECF No. 20 at 2.

## III.    DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any *express or implied contract* with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (emphasis added).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages.  *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).  In a breach of contract case, "the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary."  *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011).

In this case, the May 6, 2016 Complaint alleges that: (1) Plaintiff entered into an express contract with NASA by executing the November 18, 2011 Settlement Agreement; (2) NASA breached the November 18, 2011 Settlement Agreement; and (3) Plaintiff is entitled to damages for the breach.  Compl. ¶¶ 19, 35–38.  Because Plaintiff's claims are based on an alleged breach of a Government contract, the court has determined that it has jurisdiction to adjudicate those claims.  *See Holmes*, 657 F.3d at 1314.

B.      **Standing.**

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).   Standing must be determined "as of the commencement of suit[.]"   *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5, (1992)).   "The party invoking federal jurisdiction bears the burden of establishing [standing]."   *Lujan*, 504 U.S. at 561.

To establish standing to sue the Government for breach of contract, a plaintiff must demonstrate privity of contract with the Government.   *See Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003) ("To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States.").   In other words, the contract in question must be between the plaintiff and the Government.   *See Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990) ("To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the [G]overnment.").

In this case, Plaintiff was a party to the November 18, 2011 Settlement Agreement.  Compl. Ex. A ¶ 1. ("This Settlement Agreement . . . is entered into by and between [Plaintiff] and [NASA] to make full and final settlement of the matters raised in [Plaintiff's] Equal Employment Opportunity (EEO) complaint . . . against [NASA].").   Consequently, the court has determined that Plaintiff is in privity of contract with the Government and has standing to pursue the breach of contract claim alleged by the May 6, 2016 Complaint.

C.      **Standards of Review.**

1.      **Failure To State A Claim Upon Which Relief May Be Granted, Pursuant To RCFC 12(b)(6).**

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]"   *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . .   But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and then whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).   The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level."   *Id.* at 555.   The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff.   *Id.*

### 2.     Leave To Amend, Pursuant To RCFC 15(a)(2).

RCFC 15(a)(2) provides that a party may amend its pleading by leave of the court, and the court's leave should be freely given when justice so requires.  *See* RCFC 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  The existence of such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" may justify the denial of a motion for leave to amend.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

When the non-moving party argues that the proposed amendments are futile, the moving party must proffer sufficient facts supporting the amended pleading such that it could survive a dispositive pretrial motion.  *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1355 (Fed. Cir. 2006) (affirming trial court's denial of motion to amend when moving party did not support proposed counterclaims with facts in the record); *see also Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989) ("An amendment is a 'futile gesture' if the amended pleading could not survive a motion for summary judgment." (internal citation omitted)).  In addition, when the proposed amendment would be subject to the same legal defect found by the court with respect to the original complaint, leave to amend may be denied.  *See Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1333 (Fed. Cir. 2000) (affirming denial of leave to amend in patent case when same claim construction applied to plaintiff's amended complaint); *see also Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1404 (Fed. Cir. 1989) ("Even if [plaintiff's] motion [for leave to amend the complaint] was granted and the amendment permitted, the [trial court's] decision and judgment still would be correct. On the basis of the *apparent* futility of [plaintiff's] proposed amendment, we cannot conclude that the [trial court] abused its discretion by denying leave for that amendment." (emphasis original)).

### 3.     Summary Judgment, Pursuant To RCFC 56(a).

If there is no genuine issue as to any material fact, the moving party is entitled to summary judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also* RCFC 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  A material fact is one that might significantly affect the outcome of the suit under applicable law.  *See Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted . . . .  That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.").  The existence of "*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Id.*  Where the nonmoving party only proffers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (citations omitted).

The party moving for summary judgment has the initial burden of demonstrating the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries its burden to demonstrate an absence of any genuine issue of

material fact, then the burden of proof shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The court is required to resolve any doubts about factual issues in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1987). In doing so, all presumptions and inferences drawn from the evidence must be resolved in favor of the nonmoving party. *Id.* Nevertheless, the court must weigh the persuasiveness and plausibility of such evidence and view it "through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

**D.    The Government's September 7, 2016 Motion To Dismiss.**

The Government argues that the May 6, 2016 Complaint fails to state a claim upon which relief can be granted, because it alleges a breach of contract only in the "the most general terms." Gov't Mot. at 9. Assuming *arguendo* that the court agrees, however, on December 1, 2016, Plaintiff requested leave to amend the Complaint to plead with greater specificity. Pl. Resp. at 14–15. Therefore, the court has determined to deny the Government's Motion To Dismiss, and proceed to the Government's alternate Motion For Summary Judgment.

**E.    The Government's September 7, 2016 Motion For Summary Judgment.**

**1.    The Government's Argument.**

In the alternative, the Government argues that, even if the May 6, 2016 Complaint states a claim, the Government is entitled to summary judgment, because there is no genuine issue of material fact. Gov't Mot. at 11. Under the November 18, 2011 Settlement Agreement, NASA was required to pay Plaintiff "per diem, or meals and incidental expenses, *less lodging costs*" owed for the period Plaintiff was at OSMA HQ, "less payments . . . she has already received," in accordance with the FTR and NASA travel regulations. Compl. Ex. A ¶ 2-1 (emphasis added). In addition, NASA was required to pay Plaintiff any "movement of goods and travel reimbursements due under federal travel regulations and [NASA] travel regulations." Compl. Ex. A ¶ 2-4. In determining the amount of per diem and travel reimbursement owed to Plaintiff, NASA made the following calculations.

**a.    Regarding Per Diem And Miscellaneous Expenses.**

In this case, Plaintiff's detail constituted an "extended temporary duty" ("EDTY" or "extended TDY") assignment, and she was owed per diem at the daily rate for Washington, D.C., the maximum rate of which was $71. Gov't App'x 215–216 (General Services Administration bulletins setting the $71 daily rate). The NPR, however, and the NASA Interim Directive For Travel ("NID") 9700.2, provide "[f]or long term extended TDY assignments of more than 120 days . . . the traveler will be reimbursed 65 percent of the maximum per diem rate[.]" NPR 9700.1 § 301-11.203(C). Therefore, Plaintiff was owed 65 percent of $71 (or $46.15) for each of the 249 days she spent in Washington, D.C., or a total of $11,491.35. Gov't App'x at 108. NASA also determined that, under the NPR, Plaintiff was owed $215.06 in miscellaneous expenses—specifically, dry cleaning expenses and ATM fees. Gov't App'x at 108; *see also* NPR 9700.1 § 301-12.1 (providing that "NASA will reimburse as miscellaneous expenses all items listed in FTR 301-12.1"); 41 C.F.R. § 301-12.1 (listing laundry and bank transaction fees as reimbursable miscellaneous expenses).

### b.     Regarding Travel Expenses Paid By The Office Of Safety And Mission Assurance Headquarters.

With respect to Plaintiff's travel, that was paid for by OSMA HQ, NASA concluded that, although Plaintiff partially was reimbursed for the first and second relocation trips between Houston, Texas, and Washington, D.C., Plaintiff was still owed an additional $374.80 for the first trip and $778.60 for the second trip. Gov't App'x at 109. In addition, Plaintiff was owed a higher per diem rate of 75 percent of the maximum rate on days she spent traveling between her permanent duty station in Houston, Texas and her EDTY assignment in Washington, D.C. *See* NPR 9700.1 § 301-11.207 ("[O]n the day travel begins . . . the per diem allowable . . . is three-fourths [of the maximum rate.]"). As a result, NASA owed Plaintiff an adjustment for some travel days for which she previously received reimbursement or an additional $148. Gov't App'x at 109. But, this amount was adjusted downwards by $100, because Plaintiff was mistakenly reimbursed incidental expenses for days she spent working at her permanent duty station in Houston, Texas. Gov't App'x at 109.[6] In sum, NASA determined that Plaintiff was owed $1,201.40, in addition to the travel expenses previously paid to her by OSMA HQ. Gov't App'x at 109.

### c.     Regarding Travel Expenses Paid By The Johnson Space Center.

NASA determined that Plaintiff was overpaid for travel by the JSC in the amount of $671.75 for her May 16–June 1, 2010 trip from Washington, D.C. to Huntsville, Alabama and onto Houston, Texas. Gov't App'x at 110. During this trip, JSC erroneously paid Plaintiff per diem at a $71 rate for the nine days that she spent in Houston, her permanent duty station. Therefore, Plaintiff owed NASA $639. Gov't App'x at 110. In addition, under the NPR, Plaintiff should have been paid at a lower per diem rate for travel to Huntsville, Alabama, because she was only entitled to three-quarters of the $51 Meals and Incidental Expenses ("M&IE") Rate for Huntsville, Alabama or $38.25. Gov't App'x at 110. Based on these findings, NASA concluded that Plaintiff owed NASA $671.75 as a result of past overpayments. Gov't App'x at 110.

NASA then offset the $671.75 amount by $159.75,[7] for days traveling to and from Houston, Texas for which Plaintiff was not reimbursed. Gov't App'x at 110. This resulted in a $512 offset for any per diem that NASA determined was owed to Plaintiff. Gov't App'x at 107.

### d.     Regarding Tax Withholding.

Per diem reimbursement is treated as taxable income by the Internal Revenue Service ("IRS") when a federal employee is on an EDTY assignment for more than one year. Gov't Mot. at 22; *see also* IRS Publication 463 (2016) ("[I]f your assignment or job is indefinite, the location

---

[6] Plaintiff was paid incidentals for the following dates she was in Houston: August 11–18, 2010; September 2–13, 2010; and October 7–12, 2010. Gov't App'x at 109.

[7] Plaintiff was owed a per diem of $53.25 (or three-quarters of the maximum rate of $71) for days spent traveling between Houston, Texas and Washington, D.C. *See* NPR 9700.1 § 301-11.207 ("[O]n the day travel begins . . . the per diem allowable is three-fourths [of the maximum rate].").

of the assignment or job becomes your new tax home and you can't deduct your travel expenses while there. An assignment or job in a single location is considered indefinite if it is realistically expected to last for more than 1 year, whether or not it actually lasts for more than 1 year."). In this case, NASA concluded that it could be "reasonably determined" that Plaintiff would be at her EDTY assignment in Washington, D.C., for more than one year after February 1, 2011, *i.e.,* one year from the start date proposed by the February 21, 2010 MOU signed by Plaintiff). Gov't App'x at 111. Therefore, pursuant to NASA's tax withholding formulae,[8] $757.42 was to be withheld from Plaintiff. Gov't App'x at 107, 111.

### e.    Regarding The Combined Amount Of Per Diem.

To calculate the amount of per diem owed to Plaintiff, NASA added:

- the $11,491.35 in per diem;
- the $215.06 in miscellaneous expenses; and
- the $1,201.40 in travel reimbursement OSMA HQ owed Plaintiff.

From this amount, NASA then subtracted:

- the $512 that Plaintiff owed NASA as a result of travel reimbursement overpayment; and
- the $757.42 in withheld taxes.

This calculation results in $11,638.39, or the amount that NASA would have paid to Plaintiff pursuant to the SF 1164 presented to her on June 29, 2012. Pl. Compl. Ex. I.

---

[8]   NASA's tax withholding calculations can be found on page 111 of the Government's September 7, 2016 Appendix (Gov't App'x at 111), and are also explained on pages 8 through 9 of the Government's December 19, 2016 Supplemental Appendix (Gov't Supp. App'x at 8–9). In order to calculate the amount of tax owed, NASA first determined that Plaintiff incurred a total of $4,014.65 in taxable travel reimbursement from February 1–March 30, 2011. Gov't Supp. App'x at 8. NASA then "grossed up" this amount by 33% to account for the "Withholding Tax Allowance" ("WTA"), that NASA would pay to the IRS in order to prevent Plaintiff from incurring federal income tax on this amount. Gov't Supp. App'x at 8–9; *see also* 41 C.F.R. § 302-17.24 (providing that agencies compute the WTA by increasing the taxable amount by 33% and then withholding 25% of that "grossed up" amount). But, the WTA does not "cover state taxes, local taxes, Medicare taxes, or Social Security taxes," 41 C.F.R. § 301-17.20, and "[c]urrent law does not allow Federal agencies to reimburse transferees" for Medicare and Social Security taxes," 41 C.F.R. § 301-17.22. Therefore, NASA deducted the following from Plaintiff's "grossed up" taxable amount: a 1.45% Medicare Tax; a 4.2% Social Security Tax (using the 4.2% 2012 rate, as opposed to the 2016 rate of 6.2%); and an estimated 8.5% state income tax. Gov't Supp. App'x at 9. This resulted in a $757.42 deduction for Medicare, Social Security, and state income taxes. Gov't Supp. App'x at 9.

2.      **Plaintiff's December 1, 2016 Response.**

Plaintiff responds to the Government's September 7, 2016 Motion For Summary Judgment by stating that "summary judgment must be denied as material facts exists as to the nature of how Defendant has arrived at its calculations and whether it failed to consider alternative expenses." Pl. Resp. at 12.  Plaintiff, however, proffers no affidavits or facts with the December 1, 2016 Response to contest those placed in evidence by the Government.

3.      **The Court's Resolution.**

When a party moves for summary judgment, the non-movant "may not rest upon general denials in its pleadings or otherwise, but must proffer countering evidence sufficient to create a genuine factual dispute."  *Sweats Fashion, Inc. v. Pannil Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987).  Plaintiff's disagreement with the Government, without offering any facts in support, is not sufficient to create a "genuine dispute of material fact."  RCFC 56(a).  For this reason, the court has determined that the Government is entitled to summary judgment.

F.      **Plaintiff's December 1, 2016 Cross-Motion To Amend And The Government's December 19, 2016 Reply.**

To overcome the deficiencies in Plaintiff's December 1, 2016 Response, however, Plaintiff seeks leave to amend the May 6, 2016 Complaint.  This procedural maneuver does not satisfy Plaintiff's burden under RCFC 56(a).  *See Anderson*, 477 U.S. at 255.  Nevertheless, the court will discuss in detail why Plaintiff's December 1, 2016 Cross-Motion To Amend The Complaint is denied.  *See Kemin Foods*, 464 F.3d at 1355 ("[W]hen a party faces the possibility of being denied leave to amend on the ground of futility, that party must . . . proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion.").

By the December 1, 2016 Cross-Motion To Amend, Plaintiff requests leave to amend the May 6, 2016 Complaint to plead specific amounts of per diem not included in the $11,638.39 offered by NASA.  Pl. Resp. at 5–9; *see also* Pl. Resp. Ex. K ¶¶ 27-a through 27-w.  Specifically, Plaintiff argues that she was entitled to $14,636.40 in per diem or $2,998.01 more than what NASA offered.  Pl. Resp. at 8.  Plaintiff also requests leave to amend the May 6, 2016 Complaint to claim that the entire detail should be treated as a "taxable EDTY assignment," and to claim that she is owed a late payment fee.  Pl. Resp. Ex. K ¶¶ 27-x through 27–z.  Finally, Plaintiff also requests to amend the Complaint to add an additional allegation that Plaintiff effectively was required to simultaneously work two jobs, and is therefore owed damages in the amount of $144,098.24.  Pl. Resp. Ex. K. ¶ 27-aa.

The Government replies that the proposed amendments are futile, because the Government is entitled to summary judgment on Plaintiff's claims as a matter of law.  Gov't Reply at 6; *see also Wilson*, 874 F.2d at 392 ("An amendment is a 'futile gesture' if the amended pleading could not survive a motion for summary judgment." (internal citation omitted)).

1.     **Whether Plaintiff Is Entitled To Per Diem Incurred From January 25, 2010 To February 1, 2010.**

a.     **Plaintiff's Argument.**

Plaintiff seeks leave to amend the May 6, 2016 Complaint to allege that she began her assigned detail in Washington, D.C., on January 25, 2010, and therefore is owed an additional $334.13 in per diem. Pl. Resp. Ex. K ¶ 27-a; *see also* Pl. Resp. Ex. K-10 at 132 (alleging a per diem payment for $53.25 on 1/25/10, a $3.98 dry cleaning payment on 1/27/2010, and 6 per diem payments of $46.15 from 1/26/10 to 2/1/10). In support of the alleged start date of January 25, 2010, Plaintiff proffers a January 25, 2010 e-mail from a NASA official, regarding the reorganization within the Houston, Texas S&MA/PR Office, stating that "Tatiana Christian has started a detail to NASA HQs. Tatiana will be maintaining all of her responsibilities . . . and can be reached via email or her blackberry[.]" Pl. Resp. Ex. E.

b.     **The Government's Reply.**

The Government replies that the February 21, 2010 MOU shows Plaintiff's start date was February 1, 2010 *or* "the earliest possible date to be arranged." Compl. Ex. B at 2. In addition, the Government proffered several e-mails to evidence a February 1, 2010 start date:

- A January 24, 2010 e-mail between Plaintiff and the S&MA/PR Manager, wherein Plaintiff requested permission to telework at the S&MA/PR position in Houston, Texas from Washington, D.C. Gov't Supp. Ex. 1. Plaintiff stated that she would report "to the office in person on Tuesday, 16 February." Gov't Supp. Ex. 1. On January 25, 2010 the S&MA/PR Manager responded, giving Plaintiff leave to telework from Washington, D.C.

- A January 27, 2010 e-mail between the S&MA/PR Manager and the Director of OSMA HQ regarding Plaintiff's MOU, that confirms February 1, 2010 was the start date for Plaintiff's detail at OSMA HQ. Gov't Supp. App'x at 1 ("February 1st sound[s] fine.").

- A February 19, 2010 e-mail from the S&MA/PR Manager to Plaintiff, with a subject line of "Please Sign, Scan, and Return by 8am Central Time on Monday." Gov't Supp. Ex. 2. Attached to the e-mail is a copy of the MOU, reflecting a starting date of February 1, 2010 or the earliest possible date to be arranged. Gov't Supp. Ex. 2.

- A December 14, 2011 e-mail chain between Plaintiff and the CFO Representative, regarding the amount of per diem that was to be paid, pursuant to the November 18, 2011 Settlement Agreement. Pl. Supp. Ex. 1. In the e-mail chain, the CFO Representative states that Plaintiff's EDTY assignment began on February 15, 2010. Pl. Supp. Ex. 1. Plaintiff responds that "[p]lease note there is an omission in the dates. Should be Extended TDY assignment to HQ (2/01/10–3/30/11)." Pl. Supp. Ex. 1. The CFO

Representative responds that "[t]he correct dates will be worked separately." Pl. Supp. Ex. 1.

With respect to the January 25, 2010 e-mail proffered by Plaintiff as evidence of a January 25, 2010 start date, *that* e-mail was from "another employee who was not involved in the specifics regarding the MOU and who was only highlighting news and events internal to the [S&MA/PR] office[.]" Gov't Supp. Reply at 2. That employee, however, was not party to the February 21, 2010 MOU agreement between Plaintiff, the JSC, and OSMA HQ, regarding Plaintiff's detail to OSMA HQ, nor was he "privy" to that agreement. Gov't Supp. Reply at 3.

### c.   The Court's Resolution.

Whether Plaintiff may amend the May 6, 2016 Complaint depends on whether she proffered evidence sufficient to rebut the Government's evidence in support of its September 7, 2016 Motion For Summary Judgment. To survive a motion for summary judgment, a dispute of fact must be both "material" and "genuine." *See Anderson*, 477 U.S. at 247–48.

In this case, the dispute over the start date for Plaintiff's detail is "material," because it may affect the outcome of the suit. *See id.* ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.") But, the dispute of fact is not "genuine," because a reasonable fact finder could not resolve the factual dispute in favor of Plaintiff. *See id.* at 248. This is so, because the February 21, 2010 MOU, signed by Plaintiff, evidences a start date of either February 1, 2010 or "the earliest possible date to be arranged." Compl. Ex. B at 2. The Government has submitted evidence that the MOU was not provided to Plaintiff until February 19, 2010. Gov't Supp. Ex. 2. In addition, the Government proffered additive evidence that the interested parties (OSMA HQ and the S&MA/PR Office) contemplated a February 1, 2010 start date. Gov't Supp. App'x at 1. And, Plaintiff confirmed that her start date was February 1, 2010. Pl. Supp. Ex. 1 ("Please note there is an omission in the dates. Should be Extended TDY assignment to HQ (2/01/10–3/30/11).").

In contrast, Plaintiff proffered an e-mail from a NASA official, reflecting that Plaintiff was in Washington, D.C. on January 25, 2010, and "started a detail to NASA HQs," but Plaintiff also would maintain her S&MA/PR Office duties. Pl. Resp. Ex. E. Whatever probative value the e-mail has as to Plaintiff's entitlement to per diem for the period of January 25, 2010 to February 1, 2010 is outweighed by the fact that, on January 24, 2010, Plaintiff requested leave to telework at the S&MA/PR Office in Houston, Texas. Gov't Supp. Ex. 1; *see also Anderson*, 477 U.S. at 249–50 (holding that summary judgment may be granted if the nonmoving party's evidence is "not significantly probative"). More importantly, the Government proffered evidence that the Manager of the S&MA/PR office and the Director of OSMA HQ, *i.e.,* the respective heads of Plaintiff's permanent position and her detailed position, each sent the other an e-mail discussing Plaintiff's potential start date at OSMA HQ on January 27, 2010. Gov't Supp. App'x at 1. This, however, was *two days after* Plaintiff's alleged start date of January 25, 2010. Gov't Supp. App'x at 1 (stating that "February 1st sound[s] fine" as a start date for Plaintiff).

For these reasons, the court has determined that the Government is entitled to summary judgment on the issue of whether Plaintiff is entitled to per diem and miscellaneous expenses incurred from January 25, 2010 to February 1, 2010. *See Anderson*, 477 U.S. at 249–50. Granting

Plaintiff leave to amend the May 6, 2016 Complaint to allege that additional amounts of per diem and miscellaneous expenses accrued prior to February 1, 2010 would be futile. *See Kemin Foods*, 464 F.3d at 1354–55.

### 2. Whether Plaintiff Is Entitled To Additional Travel Reimbursement.

#### a. Regarding The February 15–21, 2010 Relocation Trip To Washington, D.C.

##### i. Plaintiff's Argument.

Plaintiff seeks leave to amend the May 6, 2016 Complaint to claim reimbursement for $1,321.17 in packing, moving, and traveling expenses, incurred between February 15 and February 21, 2010, when Plaintiff was relocating from Houston, Texas to Washington, D.C.  Pl. Resp. at 6; Pl. Resp. Ex. K ¶ 27-e; Pl. Resp. Ex. K-10 at 133.

On February 19, 2010, Plaintiff began the drive to Washington, D.C., and drove through the night, arriving at a hotel in Covington, Louisiana ("the Louisiana Hotel") at 4:30 AM on February 20, 2010.  Pl. Resp. Ex. K-10 at 133 ("Drove through the night, arrived LA on 2/20/10 at 04:30 AM"); *see also* Gov't App'x at 185 (2/20/10 hotel receipt for $91.67 from Courtyard Marriot in Covington, Louisiana).  Plaintiff left the Louisiana Hotel "around 1:11 pm" on February 20, 2010, and then went to a hotel in Lenoir City, Tennessee ("the Tennessee Hotel").  Pl. Resp. Ex. K-10 at 133; *see also* Gov't App'x at 186 (2/20/10 hotel receipt for $93.50 from Hampton Inn in Lenoir City, Tennessee).  Plaintiff arrived in Washington, D.C. on February 21, 2010.  Pl. Resp. Ex. K-10 at 133.

Plaintiff requests $760.17 in travel costs relating to this trip, including the hotel costs of $185.17, and two charges for $50 and an additional $475.  Pl. Resp. Ex. K-10 at 154 (reflecting "Relocation (to)" costs).  These costs are unlabeled.  And, Plaintiff requests $490 in "personal belongings" costs.  Pl. Resp. Ex. K-10 at 154.  Plaintiff also requests $71 in per diem for February 20, 2010.  Pl. Resp. Ex. K-10 at 133.  In sum, Plaintiff requests a total of $1,3217.17.  Pl. Resp. Ex. K. ¶ 27-e.

##### ii. The Government's Reply.

The Government replies that, under the NPR, reimbursement for employee travel by car "may not exceed the constructive costs of coach-class accommodations on a commercial air carrier."  Gov't Reply at 8; *see also* NPR 9700.1 § 301-10.309(A)(1) (explaining that reimbursement for mileage cost may not exceed the constructive cost of commercial air travel).  A "city pair rate" is used to determine the constructive cost of an airplane ticket.  *See* NPR 9700.1 § 301-10.309(A)(1) ("You must use city pair rates as your basis of comparison[.]").  Constructive costs also included the "[c]osts of excess baggage," up to an amount of 350 pounds.  *See id.* § 301-10.309(B)(2) (providing that constructive costs include "[c]osts of excess baggage not included that would have been allowed by your authorized mode"); *see also id.* § 301-11.225 (permitting reimbursement for non-furniture baggage up to 350 pounds).  The constructive costs also include "costs to and from common carrier terminals," *i.e.,* the cost of a taxi from the airport, and the costs of "transportation in and around the TDY location," *i.e.,* any additional costs relating to transportation.  *Id.* § 301-10.309(B)(1).  A "constructive voucher" must be created that accounts

for these costs, and this constructive voucher serves as a ceiling on the employee's reimbursement for travel by car. *Id.* § 301-10.311 (providing that "[a] constructive voucher is needed when the traveler did not use the authorized method of transportation").

In this case, NASA created a "constructive voucher" and weighed it against the travel receipts submitted by Plaintiff and concluded that, under the NPR, Plaintiff was entitled to no more than $1,051.30. Gov't App'x at 113. Specifically, NASA determined that a round-trip flight between Houston, Texas and Washington, D.C., would cost $436.30, based on NASA's contract carrier rate with Delta Airlines. Gov't App'x at 113. In addition, NASA determined that carrying baggage up to 350 pounds would cost $315. Gov't App'x at 113. Finally, taxi costs in Houston and Washington, D.C. would be $300. Gov't App'x at 113.

In determining the final amount of per diem owed to Plaintiff, NASA reduced the $1,051.30 by $676.50, because NASA found that it previously reimbursed Plaintiff $475 for mileage costs for that trip. Gov't App'x at 139 (record of payment to Plaintiff). In addition, NASA found that Plaintiff was overpaid $201.50 in per diem costs for that trip. Gov't App'x at 109, 138. Therefore, NASA owed Plaintiff $374.80 for her February 15–21, 2010 relocation. Gov't App'x at 138 (expense report reflecting that Plaintiff previously was paid $676.50).

With respect to Plaintiff's claim for an additional $490 in baggage costs, in addition to the $760.17 she claims, there is "no authority for [Plaintiff] to be entitled for reimbursement for both excess baggage and personal belongings on an EDTY as she calculates." Gov't Reply at 9.

### iii.    The Court's Resolution.

Pursuant to the relevant NASA travel regulations, employees are entitled to travel reimbursement, if they elect to use their personally owned vehicle ("POV"), instead of traveling by common carrier. NPR 9700.1 § 301-10.300 ("Travelers may be authorized to use a POV for official travel[.]"). Employees are entitled to reimbursement on a "mileage basis," pursuant to the FTR. *See id.* § 301-10.309 ("You will be reimbursed on a mileage basis . . . for the actual travel performed[.]"); *see also* 41 C.F.R § 301-10.303 ("You will be reimbursed an applicable mileage rate."). If NASA "authorizes" a common carrier method for travel, however, the employee's travel reimbursement will "not exceed the total for the constructive voucher of the authorized method." *See* NPR 9700.1 § 301-10.309. When air travel is authorized, the constructive voucher should include the cost of coach-class accommodations, along with (1) "[c]osts to and from common carrier," (2) "cost of excess baggage not included that would have been allowed by [the] authorized mode;" (3) "transportation in and around the TDY location;" and (4) "rental car expense, if it would have been allowed by your authorized mode." *See id.* § 301-10.309(A)(1)–(4).

In this case, NASA created a "constructive voucher" considering these allowable costs, and determined that Plaintiff's reimbursement ceiling was $1,051.30. Gov't App'x at 113. Then, NASA deducted $676.50, because Plaintiff previously was partially reimbursed for this trip. Gov't App'x at 139. Plaintiff did not cite any law or regulation that prohibited NASA from using the constructive voucher to determine reimbursable costs.

In November of 2011, Plaintiff provided NASA with hotel receipts in support of $185.17 in hotel costs.  Gov't App'x at 191.  But, these receipts are inconsistent with each other.[9]  The Louisiana Hotel receipt evidences an arrival time of 4:30 AM and departure time of 1:11 PM on February 20, 2010.  Gov't App'x at 185.  But, the Tennessee Hotel receipt evidences an arrival time of 11:31 AM, *on that same day* (*i.e.,* February 20, 2010).  Gov't App'x at 186.  Because these hotel receipts are inconsistent with each other, the court has determined that they are not "probative" evidence of whether Plaintiff should receive additional reimbursement and do not create a genuine dispute of material fact.  *See Anderson*, 477 U.S. at 249–50.

With respect to the additional $490 in "personal belongings" reimbursement, the FTR provides that an "agency *may* reimburse expenses related to baggage," including transportation charges for authorized excess baggage and all fees pertaining to checked bags.  *See* 41 C.F.R § 301-12.2 (emphasis added).  The NPR provides that NASA may pay employees for excess baggage, pursuant to the FTR, provided that the employee provides "justification" for that baggage.  *See* NPR 9700.1 § 301-12.2 ("NASA will pay all listed in FTR § 301-12.2; however, justification for the excess baggage is required by NASA."); *see also id.* § 301-11.225 (providing for reimbursement for shipment of baggage up to 350 pounds); 41 C.F.R. § 301-12.2 ("Your agency may reimburse expenses related to baggage").  But, when NASA calculated the $1,051.30 constructive voucher for Plaintiff's relocation trip, it expressly included $315 in excess baggage costs, *i.e.,* sufficient to pay for 350 pounds of baggage.  Gov't App'x at 113; *see also* NPR 9700.1 § 301-10.309(B)(2) (providing that constructive costs include "[c]osts of excess baggage not included that would have been allowed by your authorized mode").  And, under the NPR, Plaintiff's reimbursable travel costs "may not exceed the total for the constructive voucher of the authorized method."  NPR 9700.1 § 301-10.309.  Therefore, Plaintiff may not recover $490 in personal belongings costs.

For these reasons, the court has determined that the Government is entitled to summary judgment regarding Plaintiff's request for additional travel reimbursement in connection with her February 15–21, 2010 relocation to Washington, DC.  *See Anderson*, 477 U.S. at 249–50.  Therefore, granting Plaintiff leave to amend the May 6, 2016 Complaint to allege additional reimbursement for this trip would be futile.  *See Kemin Foods*, 464 F.3d at 1354–55.

### b.    Regarding The February 17–March 1, 2011 Relocation Trip To Houston, Texas.

### i.    Plaintiff's Argument.

Plaintiff did not seek leave to amend the May 6, 2016 Complaint to claim reimbursement for $1,237.59 in packing, moving, and traveling expenses incurred in connection with her February 17–March 1, 2011 relocation trip back to Houston, Texas from Washington, D.C.  Nevertheless, the $14,636.40 total in per diem and travel reimbursement alleged by the proposed amended

---

[9] Plaintiff submitted these receipts for payment by the Government on November 30, 2011.  Gov't App'x 191.  Although they are contained in the Government's Appendix in this case, they originated with Plaintiff.

complaint includes that amount.[10]  Pl. Resp. K-10 at 154.  Plaintiff request $747.59 in travel costs for this trip, as well as an additional $490 in "personal belongings" costs, or a total of $1,237.59. Pl. Resp. Ex. K-10 at 154.

### ii.  The Government's Reply.

The Government replies that NASA properly created a "constructive voucher" for Plaintiff's February 17–March 1, 2011 relocation trip.  Gov't Reply at 10.  Specifically, the Government calculated the constructive cost of Plaintiff's travel as $1,411.60 ($621.60 in airfare, $300 in taxi costs, and $490 in excess baggage).  Gov't App'x at 113.  But, NASA then reduced this amount by $739.50, because Plaintiff previously was reimbursed for this trip in that amount. Gov't App'x at 130–31.  NASA partially offset the downwards adjustment, however, because Plaintiff was not paid per diem in the amount of $53.25 for February 17, 2011 and March 1, 2011. Gov't App'x at 130.  Consequently, NASA added $106.50, for a total reimbursement of $778.60. Gov't App'x at 130.

The Government also notes that there is "no authority" that would permit Plaintiff to be reimbursed by the Government for excess baggage costs, as part of her "constructive voucher," and also be reimbursed for "personal belongings" costs.  Gov't Reply at 10.  With respect to the other amounts claimed, Plaintiff provides "no support for her claims."  Gov't Reply at 10.

### iii.  The Court's Resolution.

Plaintiff does not identify the sources of the amounts she added together to reach $747.59 in relocation costs.  Plaintiff also does not provide a narrative describing the February 17–March 1, 2011 relocation trip.  After comparing Plaintiff's claimed costs against the Government's constructive voucher, the court reads the two $50 charges as per diem, the $87.59 and $85.00 as hotel charges, and the $475 as a mileage cost.  Gov't App'x at 113 (providing a constructive voucher for Plaintiff's February 17–March 1, 2011 relocation trip).

Plaintiff has not cited any law or regulation that requires NASA to adopt her method of calculating the trip costs, as opposed to the constructive voucher method used by NASA, *i.e.,* the method required by the NPR.  *See* NPR 9700.1 § 301-10.309 (providing that employees who travel

---

[10] Plaintiff's calculations are inconsistent.  In the proposed amended complaint, Plaintiff alleges that she was owed: $12,045.15 for 261 days at the reduced per diem rate of $46.15; $1,118.25 for 21 days at the increased per diem rate of $53.25; $191.04 in dry cleaning costs; $8 in ATM fees; $1,321.17 for her February 15–21, 2010 relocation trip to Houston, Texas; $50 in Metro reimbursement; and an additional $355.00 in per diem subtracted from travel receipts Plaintiff previously submitted to NASA.  Pl. Resp. Ex. K ¶27.  Adding these figures together results in a total reimbursable amount of $15,088.61, or $1,464.79 less than $16,553.40 total alleged by Plaintiff.  But, in the calculations submitted by Plaintiff, Plaintiff adds together: $14,065.64 in per diem; $760.17 in relocation costs to Washington, DC; $747.59 in relocation costs to Houston, Texas; and $980 in combined "personal belongings" costs to reach a total of $16,553.40, less $1,917.00 in reimbursement previously received from NASA, thereby arriving at the $14,636.40 total alleged by the proposed amended complaint.  Pl. Resp. Ex. K-10 at 154.

by car "will be reimbursed on a mileage basis . . . for the actual travel performed, not to exceed the total for the constructive voucher of the authorized method"). Nor has Plaintiff cited any law or regulation that would require NASA to reimburse her for $490 in "personal belongings" costs, thereby duplicating the $490 in excess baggage costs previously offered to Plaintiff by NASA.

For these reasons, the court has determined that the Government is entitled to summary judgment regarding Plaintiff's request for $1,237.59 for her February 17–March 1, 2011 relocation from Washington, D.C., to Houston, Texas. *See Anderson*, 477 U.S. at 249–50. Therefore, granting Plaintiff leave to amend the complaint to allege additional reimbursement for this trip would be futile. *See Kemin Foods*, 464 F.3d at 1354–55.

### c.     Regarding The Additional Per Diem Related To Travel.

#### i.     Plaintiff's Argument.

Plaintiff seeks leave to amend the May 6, 2016 Complaint to request additional reimbursement of $355.00 in per diem that NASA subtracted from the offered $11,683.39. Pl. Resp. Ex. K ¶ 27–v. Specifically, NASA offset Plaintiff's per diem payment by the following amounts:

- $25 in per diem from the receipt associated with Plaintiff's June 20–25, 2010 trip to Houston, Texas;
- $185 in per diem from the receipt associated with Plaintiff's November 10– December 10, 2010 trip to Houston, Texas;
- $55 in per diem from the receipt associated with Plaintiff's December 16, 2010– January 1, 2011 trip to Houston, Texas;
- $25 in per diem from the receipt associated with Plaintiff's January 13–20, 2011 trip to Houston, Texas; and
- $65 in per diem from the receipt associated with Plaintiff's February 17–26, 2011 trip to Houston, Texas.

Pl. Resp. Ex K-10 at 139–51.

#### ii.     The Government's Reply.

The Government replies that Plaintiff was paid most of the amounts she claimed when she submitted her travel receipts, but additional offsets were required, pursuant to NASA's per diem and travel reimbursement regulations, because most of these amounts consist of $5 per diem payments that Plaintiff improperly received while at her permanent duty station in Houston, Texas. Gov't Reply at 11–13; *see also* Gov't App'x at 120 (deducting per diem payments for 12/17/10– 12/31/10); 125 (1/13/11–1/20/11); 158 (6/20/2010–6/25/10); 173 (11/10/10–12/10/10). Under the NPR, "[t]ravelers are not authorized per diem for official travel at the permanent duty station (PDS) during the [EDTY]." NPR 9700.1 § 301-11.215.

With respect to the $65 deduction, from the February 17–26, 2011 travel receipt, that amount was never deducted from the amount offered to Plaintiff. Gov't Supp. App'x at 7; *see also* Gov't App'x at 130 (2/17/11–3/1/2011 travel reimbursement receipt).

### iii.     The Court's Resolution.

Under the NPR, employees serving in an extended temporary duty assignment are not entitled to receive per diem payments, when they work from their permanent duty station.  *See* NPR 9700.1 § 301-11.215.  Plaintiff's permanent duty station was Houston, Texas, and she was there during the reimbursement periods at issue.  Pl. Resp. Ex K-10 at 139–151.

For these reasons, the court has determined that the Government is entitled to summary judgment that Plaintiff is not owed reimbursement for these amounts.  *See Anderson*, 477 U.S. at 249–50.  Therefore, granting Plaintiff leave to amend the complaint to allege additional reimbursement in the amount of $355 would be futile.  *See Kemin Foods*, 464 F.3d at 1354–55.

### d.     Regarding Other Per Diem And Miscellaneous Expenses.

### i.     Plaintiff's Argument.

Other than the travel expenses and the disallowed travel per diem, Plaintiff argues that she is owed $13,375.87 in reimbursement for her February 1, 2010–March 30, 2011 EDTY assignment.[11]  Pl. Resp. Ex. K-10 at 154.  The majority of this amount is per diem, but Plaintiff also requests: $50 in Metro reimbursement; $191.04 in dry cleaning expenses; and $8 in ATM fees.  Pl. Resp. Ex. K ¶¶ 27-c, 27-d, 27-u.  Plaintiff partially offsets this amount by $1,917.00 in reimbursement she previously received from NASA.  Pl. Resp. Ex. K-10 at 154.

### ii.     The Government's Reply.

The Government replies that NASA properly calculated the $11,491.35 for per diem offered to Plaintiff for the time she spent in Washington, D.C., together with $215.06 for miscellaneous expenses.  Gov't App'x at 108.  The additional amounts requested by Plaintiff are offset by amounts that previously were paid under various travel authorizations.  Gov't Reply at 10–13; *see also* Gov't App'x at 114–78 (evidencing travel reimbursements previously paid to Plaintiff).  In addition, Plaintiff improperly requests $30 in Metro reimbursement for May 4, 2010, since Plaintiff was previously reimbursed for mileage costs on that day.  Gov't Reply at 13; *see also* Gov't App'x at 154 (evidencing that Plaintiff was reimbursed $15 in mileage costs for 5/4/2010).

### iii.     The Court's Resolution.

Plaintiff failed to proffer evidence to counter the Government's evidence of prior reimbursement for the amounts she requests in excess of $11,491.35 for per diem and $215.06 in miscellaneous expenses calculated by NASA.  Gov't App'x at 114–78 (documents evidencing NASA's per diem payments and Plaintiff's past travel reimbursement).  Nor has she cited any law

---

[11] This amount was calculated by reducing the total $14,065.64 in per diem requested (Pl. Resp. Ex. K-10 at 154) by other amounts of per diem previously addressed in this Memorandum Opinion and Order, or by: $334.13 in per diem for January 25–February 1, 2010 (Pl. Resp. Ex. K-10 at 132); and $355 in per diem alleged separately in paragraph 27-v of the proposed amended complaint (Pl. Resp. Ex. K ¶ 27-v).

or regulation that requires NASA to pay her additional per diem.  And, Plaintiff has not cited any law or regulation that permits her to be reimbursed for $30 in Metro fees on May 4, 2010, when the Government previously reimbursed her $15 in mileage costs for that day.  Gov't App'x at 154 (evidencing that Plaintiff was reimbursed $15 in mileage costs for 5/4/2010).

For these reasons, the court has determined that the Government is entitled to summary judgment that Plaintiff is not owed reimbursement for these amounts.  *See Anderson*, 477 U.S. at 249–50.  Granting Plaintiff leave to amend the complaint to allege additional per-diem and miscellaneous expenses would be futile.  *See Kemin Foods*, 464 F.3d at 1354–55.

### 3.   Whether Plaintiff Is Entitled To Taxable Extended Temporary Duty Status For The Entire Detail, And Related Tax Reimbursement.

#### a.   Plaintiff's Argument.

Plaintiff seeks leave to amend the May 6, 2016 Complaint to allege that she was entitled to Withholding Tax Allowance ("WTA") and an Extended Temporary Duty Assignment Tax Reimbursement Allowance ("ETTRA"), pursuant to FTR §§ 301-11.603 and 301-11.605.  Pl. Resp. Ex. K ¶ 27-y; *see also* 41 C.F.R. §§ 301-11.603, 301-11.605.[12]  In addition, Plaintiff requests

---

[12] FTR § 301-11.603 provides, under the heading "What are the tax consequences of extended TDY?", that:

(a) If you are on a taxable extended TDY assignment, then all allowances and reimbursements for travel expenses, plus all travel expenses that the Government pays directly on your behalf in connection with your TDY assignment, are taxable income to you. This includes all allowances, reimbursements, and direct payments to vendors from the day that you or your agency recognized that your extended TDY assignment is expected to exceed one year, as explained in § 301-11.601.

(b) Your agency will reimburse you for substantially all of the income taxes that you incur as a result of your taxable extended TDY assignment. This reimbursement consists of two parts:

(1) The Withholding Tax Allowance (WTA). See Part 302-17, Subpart B of this Subtitle for information on the WTA; and

(2) The "Extended TDY Tax Reimbursement Allowance" (ETTRA) (in previous editions of the FTR this was known as the "Income Tax Reimbursement Allowance").

(c) The WTA and ETTRA for taxable extended TDY assignments cover only the TDY benefits described in FTR Chapter 301, Subchapter B. On an extended TDY assignment, you are not eligible for the other benefits that you would have received if your agency had permanently relocated you.

41 C.F.R § 301-11.603.

leave to amend the May 6, 2016 Complaint to allege that she is entitled to additional reimbursement, pursuant to FTR § 301-11.628.  Pl. Resp. Ex. K ¶ 27-z; *see also* 41 C.F.R § 301-11.628.[13]

Under the FTR, a WTA is mechanism for "reimbursing a [f]ederal [e]mployee for substantially all of the income taxes incurred as result of a taxable EDTY."  Pl. Reply at 6.  A taxable EDTY assignment is defined as a temporary duty assignment that continues for more than one year, and begins on the date the agency recognizes that "the employee's temporary assignment will exceed one year."  *See* 41 C.F.R. § 301-11.601 ("A taxable extended TDY assignment is a TDY assignment that continues for so long that, under the IRC the employee is no longer considered temporarily away from home during any period of employment if such period exceeds 1 year. You are no longer temporarily away from home as of the date that you and/or your agency recognize that your assignment will exceed one year.")

In this case, Plaintiff argues that the February 1, 2010–March 30, 2011 detail to OSMA HQ constructively was reclassified as an EDTY assignment in November, 2011, when NASA agreed to reimburse her for per diem, pursuant to the November 18, 2011 Settlement Agreement.  Pl. Reply at 7.  "Since the whole assignment was retroactively re-classified as an EDTY after the assignment ended . . . there was *never* a time when [NASA] could have contemplated that the complete assignment could have been anything other than an EDTY."  Pl. Reply at 7 (emphasis original).  As such, per diem reimbursement for Plaintiff's entire detail should be treated as taxable income, and, consequently, Plaintiff is owed a WTA for the entire detail period.  Pl. Reply at 7.

_____

FTR § 301-11.605 further provides that:

> You should file your "Statement of Income and Tax Filing Status" for your taxable extended TDY assignment at the beginning of your extended TDY assignment, or as soon as you or your agency realizes that your TDY assignment will incur taxes. You should provide the same information as the sample "Statements of Income and Tax Filing Status" shown in part 302-17, subpart F (one-year process) or subpart G (two-year process) of this subtitle.

41 C.F.R § 301-11.605.

[13] FTR § 301-11.628 provided that "[federal employees] are reimbursed for the tax on the tax reimbursement received."  41 C.F.R. § 301-11.628 (2015).  It was removed by technical amendment published in the Federal Register on March 20, 2015.  *See* Federal Travel Regulation; Temporary Duty (TDY) Travel Allowances (Taxes); Relocation Allowances (Taxes); Technical Amendment, 80 Fed. Reg. 14852-01, 2015 WL 1254432 (March 20, 2015).

### b.      The Government's Reply.

The Government replies that the procedures for calculating and reimbursing an employee for WTA depend on when the agency first learns that an employee's extended temporary duty assignment will last for longer than a year. Gov't Reply at 15. In this case, the February 21, 2010 MOU signed by Plaintiff indicated that her detail was to last for "an initial period of three months, to be extended by mutual agreement." Compl. Ex. B at 2. Therefore, under the MOU, NASA could not have known that Plaintiff's EDTY assignment would last for more than one year until February 1, 2011, *i.e.,* one year after her temporary assignment began on February 1, 2010. Gov't Reply at 15. In any event, the WTA would have been a "wash" for Plaintiff, even if it had applied to the entire period, because, under the FTR, the agency pays the entirety of the WTA to the IRS, and not to the employee. Gov't Reply at 16; *see also* 41 C.F.R. § 301-11.604(b) (explaining that the "agency will compute the WTA from all taxable benefits received [and] pay that amount to the IRS").

The Government adds that the WTA does not apply to the $757.42 in taxes that NASA withheld, when it calculated the $11,638.39 owed Plaintiff, because those taxes consist of: $224.72 for Social Security; $77.62 for Medicare; and $454.99 for an estimated state income tax of 8.5 percent. Gov't Reply at 16. The WTA, however, applies only to federal income tax; it does not apply to Social Security, Medicare, or state taxes. *See* 41 C.F.R. § 302-17.20 ("The purpose of the WTA is to protect you from having to use part of your relocation expense reimbursements to pay Federal income tax withholding; it does not cover state taxes, local taxes, Medicare taxes, or Social Security taxes[.]"). Although a federal employee may obtain reimbursement for state taxes,[14] pursuant to an ETTRA, this applies in the tax year *after* a federal employee receives a travel reimbursement.[15] Gov't Reply at 17; *see also* 41 C.F.R. § 302-17.60 ("Year 1 is the calendar year in which the agency reimburses [the federal employee] for a specific expense, provides an allowance or pays a vendor directly . . .Year 2 is the calendar in which [the employee] submit[s an ETTRA] claim and [the] agency pays [the ETTRA.]"). In this case, however, Plaintiff has not yet received her travel reimbursement, because she is contesting the amount offered to her by NASA. Gov't Reply at 17.

The Government further points out that treating the entire detail as a taxable EDTY assignment may have harmful tax consequences for Plaintiff. Gov't Not. at 5. Specifically, treating the entire detail as taxable would require NASA to withhold Medicare and Social Security

---

[14] Current law does not allow federal agencies to reimburse employees for Social Security and Medicare taxes. 41 C.F.R. § 302-17.22(d) ("The WTA does not cover the following relocation expenses . . . [a]dditional taxes due under the Federal Insurance Contributions Act including Social Security tax, if applicable, and Medicare tax. Current law does not allow Federal agencies to reimburse transferees for these employment taxes on relocation benefits. However, your agency will deduct for these taxes from your reimbursements for taxable items.")

[15] ETTRA may be calculated based on a one-year or a two-year process. *See* 41 C.F.R. § 301-11.604(c) ("For [an] ETTRA, [the] agency will use the same one-year or two-year process that it has chosen to use for the relocation income tax allowance (RITA)."). NASA uses the two-year process for calculating ETTRA. Gov't Reply at 17.

taxes from the amounts of per diem owed Plaintiff, therefore reducing the amount of reimbursement received. Gov't Not. at 5. Although the WTA and ETTRA serve to offset any federal income or state income tax consequences of treating the entire detail as taxable, those processes do not allow NASA to reimburse Plaintiff for any Medicare or Social Security tax. *See* 41 C.F.R § 302-17.22(d) ("The WTA does not cover the following relocation expenses . . . [a]dditional taxes due under the Federal Insurance Contributions Act including Social Security tax, if applicable, and Medicare tax. Current law does not allow Federal agencies to reimburse transferees for these employment taxes on relocation benefits.").

### c.    The Court's Resolution.

When a federal employee is on an EDTY assignment that lasts for more than one year, the employee is no longer considered to be "temporarily away from home" by the IRS, and travel reimbursement, including per diem, becomes taxable income to the employee. *See* 41 C.F.R. § 301-11.601. Under the FTR, the period of an EDTY assignment for which an employee receives the WTA begins "on the date that [the agency] recognize[s] the employee's temporary assignment" will last for more than one year. *See* 41 C.F.R § 301-11.604(b) ("If your agency realizes *during* a TDY assignment that you will incur taxes (because, for example, the TDY assignment has lasted, or is going to last, longer than originally intended) then your agency will compute the WTA for all taxable benefits received since the date it was *recognized* that you are no longer 'temporarily away from home' . . . . Your agency will pay that amount to the IRS, and then will begin paying WTA to the IRS until your extended TDY assignment ends."(emphasis added)).

In this case, the dispute of fact as to when NASA "recognized" that Plaintiff's detail to OSMA HQ would last for more than one year is "material," because it affects the tax treatment of Plaintiff's travel reimbursement." But, this dispute of fact is not "genuine," because Plaintiff argues that the agency "recognized" that her assignment would last for more than one year on February 1, 2010. The February 21, 2011 MOU, however, stated that that Plaintiff was to be detailed to OSMA HQ for three months, to be extended only by the mutual agreement of the parties. Compl. Ex. B at 2. Based on that document, a reasonable factfinder could not conclude that NASA "recognized" that Plaintiff's detail would last for more than a year on February 1, 2010.

The court has determined that the Government is entitled to summary judgment regarding the date that NASA recognized that Plaintiff's EDTY assignment lasted for more than one year. *See Anderson*, 477 U.S. at 249–50. Therefore, granting Plaintiff's proposed amendment would be futile. *See Kemin Foods*, 464 F.3d at 1354–55.

### 4.    Whether Plaintiff Is Entitled To A Late Payment Fee.

### a.    Plaintiff's Argument.

Plaintiff also seeks leave to amend the May 6, 2016 Complaint to allege that NASA is required to pay her a late fee under FTR § 301-52.19, because NASA failed to timely pay money owed under the FTR. Pl. Resp. K ¶ 27-x; *see also* 41 C.F.R § 301-52.19 ("[Y]our agency must pay you a late payment fee, in addition to the amount due you, for any proper travel claim not reimbursed within 30 calendar days of your submission of it to the approving official.").

On November 30, 2011, Plaintiff provided NASA with hotel receipts and other travel expenses. Pl. Reply at 10–11. Under the FTR, employing agencies are required to reimburse travel within 30 days of submission of a proper travel claim. *See* 41 C.F.R. § 301-52.17 ("Your agency must reimburse you within 30 calendar days[.]"). But, NASA failed to reimburse her within the required 30-day period, so she is now owed a late payment fee. Pl. Reply at 11.

Although NASA provided Plaintiff with the June 29, 2012 SF 1164, "Claim For Reimbursement For Expenditures On Official Business," that indicated she was to be reimbursed $11,638.39 for per diem and travel reimbursement, she refused to sign it, because it was not clear from the form how the amount was calculated. Pl. Reply at 11; *see also* Compl. Ex. I (SF 1164 provided to Plaintiff).

### b.    The Government's Reply.

The Government replies that the FTR late payment fee regulations do not apply, because Plaintiff never submitted a "proper travel claim." Gov't Reply at 19; *see also* 41 C.F.R § 301-52.19 ("[Y]our agency must pay you a late payment fee, in addition to the amount due you, *for any proper travel claim* not reimbursed within 30 calendar days[.]" (emphasis added)). In this case, pursuant to the November 18, 2011 Settlement Agreement, NASA calculated the amount of travel reimbursement owed Plaintiff, and then presented her with an SF 1164, the form used to submit a travel claim to the agency. Gov't Reply at 19. But, Plaintiff refused to sign the claim form and subsequently contested the amount owed. Gov't Reply at 19. In addition, the November 18, 2011 Settlement Agreement never provided that Plaintiff would be entitled to a late payment fee. Gov't Reply at 19.

### c.    The Court's Resolution.

Under the FTR, an employing agency must reimburse an employee within thirty days of the submission of a "proper travel claim," or otherwise incur a late payment fee. *See* 41 C.F.R § 301–52.19. In this case, however, Plaintiff did not submit a "proper travel claim" to NASA. Instead, NASA agreed, as reflected in the November 18, 2011 Settlement Agreement, to determine whether Plaintiff was owed per diem or travel reimbursement under the FTR and NPR, and then pay Plaintiff. Compl. Ex. A at ¶¶ 2-1, 2-4. After determining that Plaintiff was owed additional per diem and travel reimbursement, NASA created a constructive travel claim, and presented Plaintiff with that claim in the form of the SF 1164. Compl. Ex. I. But, Plaintiff elected to contest the offer.

This would be a different case if Plaintiff signed and submitted the SF 1164, and NASA failed to pay her travel reimbursement within thirty days. *See* 41 C.F.R § 301-52.19. But, Plaintiff elected to contest the amount of travel reimbursement offered by NASA. Therefore, NASA cannot be held liable for late payment.

For these reasons, the Government is entitled to summary judgment, as a matter of law, because NASA does not owe Plaintiff a late payment fee. *See Anderson*, 477 U.S. at 249–50 Granting Plaintiff leave to amend the May 6, 2016 Complaint to allege that she is owed a late fee would be futile. *See Kemin Foods*, 464 F.3d at 1354–55.

### 5.      Whether Plaintiff Is Entitled To A Second Salary.

#### a.      Plaintiff's Argument.

Finally, Plaintiff seeks leave to amend the May 6, 2016 Complaint to allege that NASA owes her an additional $144,098.24, because "the Agency forced her to work two jobs but . . . only paid [her] to work one." Pl. Resp. Ex. K ¶ 27-aa. Plaintiff avers that she was required to work for OSMA HQ while also maintaining JSC duties, requiring her to work in excess of twelve hours a day. Pl. Reply at 12. Although Plaintiff was never formally appointed to a second position, this does not change the fact that Plaintiff was forced to work "double duties" by both OSMA HQ and the JSC. Pl. Reply at 12–13. Plaintiff recognizes that the Dual Compensation Act bars an employee from receiving "basic pay" from more than one position, but Plaintiff argues that bar does not apply when pay consists of "fees paid on other than a time basis." Pl. Reply at 13; *see also* 5 U.S.C § 5533(d)(2) ("[T]his section does not apply to . . . pay consisting of fees paid on other than a time basis."). Plaintiff contends that her "knowledge, skills, and experience as well as pay grades for the second position she worked," make her eligible for pay at $62.98 per hour for eight hours a day, or $144,098.24 for the 286-day period of her detail. Pl. Resp. Ex. K ¶ 27-aa.

#### b.      The Government's Reply.

The Government replies that proposed amendment to the May 6, 2016 Complaint fails to state a claim, because "[i]t is well established that an appointment is necessary for a person to hold a government position and be entitled to its benefits." Gov't Reply at 20 (quoting *Horner v. Acosta*, 803 F.2d 687, 692 (Fed. Cir. 1986)). For an appointment to exist generally there must be an "unconditional action by an authorized federal official designating an individual to a specific civil service position," such as a "SF 50 or 52 . . . executed by an authorized government official." *Horner*, 803 F.2d at 692. In this case, "[n]othing in [Plaintiff's] pleading would allow the [c]ourt to draw an inference that she has a SF 50 or 52 appointing her to a second position, or that the settlement agreement . . . required . . . the Government to pay Ms. Christian a second salary." Gov't Reply at 21.

In addition, amending the complaint would be futile, because the Government is entitled to summary judgment as a matter of law, under the Dual Compensation Act, 5 U.S.C. § 5533, that bars a government employee from drawing salary from two different positions. Gov't Reply at 21–22.

#### c.      The Court's Resolution.

As a matter of law, under the Dual Compensation Act, a government employee is "not entitled to receive basic pay from more than one position for more than an aggregate of 40 hours of work in one calendar week (Sunday through Saturday)," subject to certain exceptions. *See* 5 U.S.C. § 5533(a). That Act also provides, under the heading "Extra Pay For Details Prohibited," that:

An employee may not receive—

(1) additional pay or allowances for performing the duties of another employee; or

(2) pay in addition to the regular pay received for employment held before his appointment or designation as acting for or instead of an occupant of another position or employment.

5 U.S.C. § 5535(b).

In addition, the Act also provides, under the heading "Extra Pay For Extra Services Prohibited," that:

> An employee . . . *whose pay or allowance is fixed by statute or regulation may not receive additional pay or allowance for the disbursement of public money or for any other service or duty*, unless specifically authorized by law and the appropriation therefor specifically states that it is for the additional pay or allowance.

5 U.S.C. § 5536 (emphasis added).

In *Puglisi v. United States*, 215 Ct. Cl. 86 (1977), the United States Court of Appeals For the Federal Circuit's predecessor held that, under the Dual Compensation Act, "[n]o one (with some exceptions) may receive the basic pay of more than one full-time civilian position in the federal government." *Id.* at 91. "[The] obvious purpose of [the Dual Compensation Act] is in general to put a ceiling on the amount of compensation certain classes of individuals can receive from the federal government." *Id.* at 95.

In this case, Plaintiff's pay was "fixed by statute;" *i.e.,* she was compensated under the GS System as a GS-14. Compl. ¶ 10 (explaining that "NASA promoted Ms. Christian to [a] GS-14 position"); *see also* 5 U.S.C. § 5101 (describing the GS System). Therefore, the Dual Compensation Act bars Plaintiff from receiving additional salary that was not specifically authorized and appropriated. *See* 5 U.S.C. §§ 5533, 5335–36.

Nevertheless, Plaintiff argues that she may still receive additional pay, under the statutory exception for "pay consisting of fees paid on other than a time basis." *See* 5 U.S.C. § 5533(d)(2). But, this is a misstatement of the proposed amendment to the May 6, 2016 Complaint; Plaintiff requests additional pay at a rate of $62.98 *per hour.* Pl. Resp. Ex. K ¶ 27-aa (emphasis added). This is *not* a "fee paid on other than a time basis," but is a salary payment, expressly based on a "time basis." Pl. Resp. Ex. K ¶ 27-aa (alleging that Plaintiff was owed additional pay at the rate of $62.98 *per hour,* "commensurate with her knowledge, skills, and experience as well as pay grades for the second position she worked").

For these reasons, the court has determined that the Government is entitled to summary judgment, as a matter of law, because Plaintiff is barred from receiving a second salary during the period she was detailed to Washington, D.C. *See* 5 U.S.C. § 5533(a); *see also Anderson*, 477 U.S. at 249–50. Therefore, granting Plaintiff leave to amend the May 6, 2016 Complaint to allege that she is owed a second salary would be futile. *See Kemin Foods*, 464 F.3d at 1354–55.

IV.     **CONCLUSION.**

For the aforementioned reasons, the court grants the Government's September 7, 2016 Motion For Summary Judgment.  Plaintiff's December 1, 2016 Cross-Motion For Leave To Amend The Complaint is denied.  All other pending motions are dismissed as moot.

   **IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**